UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | | |
|---|---|---|
| BILLY GENE BELCHER, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 11-143-KKC |
| | ) | |
| v. | ) | |
| | ) | |
| WARDEN DEBORAH HICKEY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Billy Gene Belcher is an inmate confined at the Federal Medical Center in Lexington, Kentucky. Belcher has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 2] and has paid the $5 filing fee. Having reviewed the petition[1], the Court must deny relief because the decision of the disciplinary hearing officer was supported by some evidence.

In his petition, Belcher indicates that on April 22, 2010, while incarcerated at the Federal Correctional Complex in Lompoc, California, he provided a urine sample to prison staff for testing. Belcher alleges that the sample cup was not sealed as directed by Bureau of Prisons policy. Belcher also indicates that once the test was completed, prison staff advised him that his sample had tested negative for prohibited substances, and he was permitted to return to the prison dormitory. [R. 2 at 7] However, subsequent responses to his grievances state that the sample Belcher provided

---

[1] The Court conducts a preliminary review of habeas corpus petitions. 28 U.S.C. § 2243; *Harper v. Thoms*, No. 02-5520, 2002 WL 31388736, at *1 (6th Cir. Oct. 22, 2002). Because the petitioner is not represented by an attorney, the petition is reviewed under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage the Court accepts the petitioner's factual allegations as true and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Once that review is complete, the Court may deny the petition if it concludes that it fails to establish grounds for relief, or otherwise it may make such disposition as law and justice require. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

initially tested positive for prohibited substances. [R. 2 Exh. 1 at 2] Regardless of which statement is factually correct, shortly thereafter the test sample was forwarded to an outside testing laboratory for further analysis.

On April 28, 2010, the testing laboratory reported to the prison that the sample had tested positive for chemicals associated with the use of marijuana. On that date, prison staff prepared an Incident Report charging Belcher with "Use of any Narcotic THC (Cannabinoids-Metabolite) or any Drug Not Authorized by Medical Staff," an Offense Code 112 violation, and delivered a copy of the Incident Report to Belcher the same day at 13:00 hours. [R. 2 Exh. 1 at 3] Staff advised Belcher of his rights at the upcoming hearing on April 30, 2010.

The disciplinary hearing officer ("DHO") held a hearing on the charge on May 5, 2010. [R. 2 Exh. 1 at 3] Belcher waived his right to staff representation at the hearing, and did not call any witnesses in his defense. He did, however, present a prepared written statement in his defense. [R. 2 Exh. 1 at 3] Based upon the evidence, the DHO found Belcher guilty of the charged offense. As punishment, the DHO disallowed 41 days of Good Conduct Time, ordered Belcher to serve 60 days in disciplinary segregation, ordered the loss of commissary and telephone privileges for 180 days, and revoked visitation privileges for one year.[2] [R. 2 Exh. 1 at 4]

Belcher appealed the DHO's decision through the BOP's inmate grievance program. In his appeal, Belcher contended that he was told shortly after he gave his urine sample that it had tested negative for prohibited substances, and that if it had tested positive, he would have been immediately taken to administrative segregation. The regional office denied Belcher's appeal, a determination

---

[2] Two pages of the Incident Report, including the second page which typically contains the DHO's discussion of the evidence supporting the charge, are conspicuously absent from the materials provided by Belcher in support of his petition.

2

upheld by the BOP's Central Office on February 1, 2011. [R. 2 Exh. 1 at 2]

In his petition, Belcher asserts three grounds for relief. First, Belcher reiterates his argument that the vessel containing the urine sample was not sealed as required by BOP policy, and that the fact that he was initially told his sample was "clean" is further evidence that the sample he gave must have been contaminated or switched with another sample. Second, Belcher contends that he was not given a copy of the Incident Report within 24 hours of the infraction as required by 28 U.S.C. 541.15(b) in violation of his due process rights. Finally, Belcher indicates that following his transfer and arrival at FMC-Lexington, he has been advised that his pay rate and seniority at his Unicor prison job has been adversely affected and that his loss of visitation privileges has been extended to two years.

Belcher's allegations regarding the integrity of the testing sample and testing procedures are challenges to the sufficiency of the evidence used to convict him of the prison disciplinary offense. When a prison disciplinary board takes action that results in the loss of good time credits in which the prisoner has a vested liberty interest, the Due Process Clause requires prison officials to observe certain protections for the prisoner. Specifically, the prisoner is entitled to advanced notice of the charges, the opportunity to present evidence in his or her defense, whether through live testimony or documents, and a written decision explaining the grounds used to determine guilt or innocence of the offense. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974). Further, the board's findings used as a basis to revoke good time credits must be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

In support of his argument that his urine sample tested "clean" of prohibited substances, Belcher points out that (1) he was told immediately after the preliminary test that his sample was

"clean"; (2) he would have been taken into administrative segregation had it tested "dirty" but that he was not; and (3) at a program review meeting on April 27, 2010, he was not notified of any disciplinary charges against him. The DHO considered Belcher's arguments [R. 2 Exh. 1 at 4] but determined that the positive test result provided by the outside testing laboratory and the apparently -regular chain of custody established Belcher's guilt of the offense. When determining whether a DHO's decision is supported by "some evidence," the Court does not conduct an independent review of the evidence or assess the credibility of witnesses, it asks only "whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Here, the DHO pointed to plainly relevant and persuasive evidence indicating that Belcher had provided the sample that was tested and that the test indicated a positive result for prohibited substances. Because there is some evidence to support the DHO's finding of guilt, that finding does not offend Belcher's procedural due process rights.

Belcher next alleges that he was not notified of the charges against him within 24 hours as required by 28 U.S.C. § 541.15(b), in violation of his due process rights. Belcher is presumably referring to a nearby section which states:

> Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident.

28 C.F.R. § 541.15(a); BOP Program Statement 5270.07, Ch. 6, §1(a). Belcher's argument fails for several reasons.

First, as noted by the DHO, prison staff provided Belcher with a copy of the Incident Report on April 28, 2010, the same day the prison received the lab test results from the outside contractor confirming the positive test for cannabinoids. The BOP therefore complied with Section 541.15(a).

4

Second, even if the 24-hour period were triggered by his initial positive drug test on April 22, 2010, the rule requires BOP staff to provide the inmate with a written copy of the charge "*ordinarily* within 24 hours" after the incident. The rule expressly permits prison staff to provide a written copy to the inmate more than 24 hours after the incident where circumstances warrant it, such as the prisoner's transfer to another cell block or institution, or in this case, if additional time is needed to confirm the results of a preliminary drug test. *Booth v. Patton*, No. 08-02-HRW (E.D. Ky. 2008) (slip op. of June 10, 2009 at pp. 3-4). Finally, even if the BOP had failed to follow the provisions of Section 541.15(a), the requirements of the Due Process Clause are defined by the United States Constitution, not by an agency's internal regulations or guidelines. *Sandin v. Conner*, 515 U.S. 472, 485 (1995). An agency's failure to adhere to its own guidelines does not, by itself, state a due process claim. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004). The record establishes that Belcher received written notice of the charges more than 24 hours before the DHO hearing, and *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974) does not require more.

Finally, Belcher asserts that in addition to the charges expressly imposed by the DHO's May 5, 2010, report, the BOP is also sanctioning him with a reduction in his Unicor pay grade and seniority as well as an additional one-year loss of visitation privileges. [R. 2 at 8] Belcher does not provide any documentation from the BOP explaining why these sanctions have been imposed. What is clear, however, is that they are distinct from the sanctions imposed in the DHO's report, which are the only sanctions Belcher has administratively exhausted. Before a prisoner may seek habeas relief under Section 2241, he must exhaust his administrative remedies within the BOP. *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006). Because Belcher has not

5

challenged the BOP's imposition of these sanctions through its Inmate Grievance program, he may not pursue his claims regarding them at this time. In addition, because these sanctions do not affect the fact or duration of his confinement, Belcher may not challenge their imposition in a habeas proceeding. *Jackson v. FDC-Honolulu Disc. Hrg. Cmte.*, 229 F. App'x 192, 193 (3d Cir. 2007); *Ricco v. Conner*, 146 F. App'x 249, 252-53 (10th Cir. 2005).

Accordingly, **IT IS ORDERED** that:

1. Belcher's petition for a writ of habeas corpus [R. 2] is **DENIED.**

2. The Court will enter an appropriate judgment.

This the 2nd day of May, 2011.

Signed By:
*Karen K. Caldwell*
United States District Judge